# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JERMAINE WATSON, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:12-CV-972-RDP |
| DEAN DAIRY HOLDINGS LLC, | } |
| Defendant. | } |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion for Summary Judgment (Doc. # 26). The matter has been fully briefed. (Docs. # 31 and 33). Plaintiff filed his Complaint initiating this action on March 27, 2012. (Doc. # 1). Plaintiff alleges that he was discriminated against because of his race (African-American) in terms of pay, overtime, scrutiny, and difficulty of tasks. In his opposition to Defendant's Motion, Plaintiff compares himself to two other Dean Dairy employees, Matthew Hall (Caucasian) and Sergio Robles (Hispanic). (Doc. 16, ¶¶ 28, 30-53). Defendant denies that Plaintiff was discriminated against, and in particular argues that Hall and Robles are not appropriate comparators. (Doc. # 27).

**I.    Relevant Facts**

Defendant operates a facility in Homewood, Alabama where milk is received and processed. (Doc. # 28-1 at p. 42; Doc. # 28-6 at pp. 15-21).[1] During the relevant time period, Greg Blankenship was the Plant Superintendent and Valerie Meyers was the Plant Manager. (Docs. # 28-9 and # 28-10). Brian Ottwell, Tillman Miller, and Landon Bone, all white males, were supervisors who rotated

---

[1] When citing to depositions in the record, the court alternatively makes references either to the page number of the docket entry (*e.g.*, Doc. # 28-6 at 5-7) or the actual page number of the deposition (*e.g.*, Doc. # 28-6 at pp. 15-21).

through the shifts and reported to Blankenship. (Doc. # 28-6 at pp. 28-29). Generally, Blankenship was at the Homewood facility from 7:00 a.m. until 5:00 or 6:00 p.m., albeit mostly spending time in his office. (Doc. # 28-6 at pp. 29-30, 169-70).

Plaintiff was hired as a Receiver in 2006 and, after working in other positions, was again reclassified as Receiver in 2008. (Doc. # 32-1 at 2; Doc. # 28-1 at 16-18, 21, 33-34, 72; Doc. # 28-3 at 23-35). As of July 2008, Plaintiff and Sergio Robles were both Receivers and each made $12.75 per hour. (Doc. # 28-3 at 23-35).

Defendant had three Receiver positions: (1) the Monday-Thursday day shift Receiver position held by Plaintiff, (2) the night shift position (eventually held by Hall), and (3) the weekend position (eventually held by Robles). (Doc. # 28-1 at pp. 53, 60-62, 65; Doc. # 28-8 at p. 64). During the night shift, the Receiver would perform the same duties as the Receiver did on the other shifts, including finishing the washing and cleaning of any tankers that were not cleaned on the shift before. (Doc. # 28-6 at pp. 24-26). However, in addition to those duties, the night shift Receiver would also perform clean-in-place ("CIP") and sanitation on the raw side of the plant, as there was no processing going on at that time. Batching, which is part of the job responsibilities performed in the processing area, mainly occurs only on the night shift, typically starting around 3:00 a.m. (Doc. # 28-6 at p. 19; Doc. # 31 at 7).

Plaintiff previously held a Filler Operator position, but that job was eliminated in August 2008. (Doc. # 28-3 at pp. 16, 17-18). Plaintiff was awarded the Receiver position on a Monday through Thursday schedule of 10 hours per day, 6:00 a.m. to 4:00 p.m. (*Id*. at 17, 18, 19). Robles was assigned the weekend shift—a Friday through Sunday 12-hour schedule, where his overtime was calculated after 10 (rather than 8) hours. (Doc. # 28-3 at pp. 23-35).

Defendant entered into a Collective Bargaining Agreement ("CBA") with AFL-CIO Affiliate Local No. 201-A. (Docs. # 28-2 and 28-3).  The CBA was effective June 8, 2009 through June 3, 2012. (Docs. # 28-2 and 28-3).[2]  Pursuant to the CBA, as of June 7, 2009, Receivers' pay was set at $13.25 per hour.  Effective that same date, pay for the Sanitation/CIP position was $13.92 per hour.  (Doc. # 28-3 at 1).

After the pay increases under the CBA in 2009, Plaintiff, Hall, and Robles were each making $13.92 ($0.67 above the rate of pay for Receiver). Plaintiff earned this rate because of his Filler Operator classification, and Hall and Robles received that pay because they performed work in the Sanitation/CIP job classification. (Doc. # 28-10 at ¶ 7, Ex. 4 at DF-163, 283, 372; Doc. # 28-2 at p. 222; Doc. # 28-6 at pp. 120-21, Ex. 14).

Although it speaks in terms of "Relief" employees, a term not defined in the CBA. the CBA provides that Pasturizers, Sanitation/CIP employees and Receivers could earn an additional $0.25 per hour if they are qualified to efficiently perform one of those other positions, 50 cents per hour if qualified to efficiently perform two of the other positions, and $0.75 per hour if qualified to efficiently perform three of the other positions.  (Doc. # 28-3 at 2).

The CBA also provides that leadpersons "shall receive one dollar ($1.00) per hour above the rate of the appropriate classification.  Leadperson is not a bid job."  (Doc. # 28-3 at 2).  That same provision also provides that employees interested in being considered for a leadperson position will present a written resume to the Plant or Production Manager.  (Doc. # 28-3 at 2).  It does not provide that management must receive a resume before selecting a leadperson.  (Doc. # 28-3 at 2).

---

[2] Apparently Plaintiff attempted to file a grievance over his pay with the Union, but because he had withdrawn from active status, the Union did not pursue it on his behalf.  (Doc. # 28-1 at 116-18).

In February 2010, Robles received a $1.00 per hour raise from $13.92 to $14.92. Meyers testified that this increase was due to Robles serving in a leadman designation. (Doc. # 28-8 at p. 72). Robles was at the plant on the weekends by himself doing maintenance checks, making sure everything was "okay at the facility," and he was the contact person. (Doc. # 28-8 at pp. 74-75). However, on the bottom of the personnel change notice, there is a note "$1.00 CIP/Batch/Lab Cert/Maint help." (Doc. # 28-3 at 23-35). Plaintiff covered the shift for Robles on a particular weekend, and Plaintiff received the same additional $1.00 per hour. (Doc. # 28-8 at p. 76). However, Hall and Plaintiff both previously covered the weekend shift for Robles on other occasions without receiving the additional pay. (Doc. # 28-10 at ¶ 9). The Rule 56 record indicates that the reason that Plaintiff subsequently received the additional $1.00 per hour while working for Robles was that he requested this "substitute" pay, and Meyers approved that request. (Doc. # 28-1 at 45).

Also, in February 2010, Plaintiff was moved from a Sanitation/Receiver to a Receiver position. (Doc. # 28-3 at 23-35). Pursuant to the CBA, as of June 6, 2010, Receivers' pay was set at $13.75 per hour. Pay for the Sanitation/CIP position was $14.42 as of that date. (Doc. # 28-3 at 1).

At some point in 2010, Plaintiff was told by Meyers and Blankenship that he could earn 25 cents more per hour if he learned an incentive job, like batching. (Doc. # 28-1 at pp. 104-05). Plaintiff began training in the batching area. (Doc. # 28-1 at pp. 104-05). This training also allowed Plaintiff to earn additional overtime. (Doc. # 28-9 at ¶ 4). Plaintiff trained for approximately two months and eventually was able to fill in for one of the batching employees on his own. (Doc. # 28-1 at pp. 105-06). Nevertheless, Plaintiff never followed up with Blankenship to inform him that he felt he was fully trained and deserving of the additional 25 cents per hour. (Doc. # 28-1 at pp. 106-

4

08).  Instead, Plaintiff spoke with one of the supervisors, Ottwell.  Ottwell told Plaintiff he would e-mail Blankenship about the increase.  (Doc. # 28-1 at pp. 107-08).  Ottwell reported to Plaintiff that he had sent the e-mail and told Plaintiff to follow up with Blankenship or Meyers; however, Plaintiff did not do so.  (Doc. # 28-1 at pp. 108-09).

In October 2010, Hall received a $0.25 increase from $14.42 per hour to $14.67 per hour. Hall was earning 25 cents more than Plaintiff because he was performing Sanitation/CIP job duties in addition to Receiver job duties *and* had requested the additional pay.  (Doc. # 28-10 at ¶ 8).  He performed Sanitation/CIP duties on the raw side of the plant and on other lines that are cleaned only at night after production had ended for the day.  (Doc. # 28-10 at ¶ 8).  At the time, Hall's classification was changed from Sanitation/CIP to Sanitation/CIP/Receiver.  (Doc. # 28-3 at 23-35).

In March 2011, Robles received an increase from $15.42 to $15.67 per hour.  On the bottom of the personnel change notice, there is a note: "This is a pay increase for learning how to run the batch room." (Doc. # 28-3 at 23-35).  And in July 2011, Hall was making $15.12 per hour, Plaintiff was making $14.87 per hour, and Robles was making 16.12 per hour.  (Doc. # 28-3 at 23-35).

Plaintiff filed a charge of discrimination with the EEOC on July 27, 2011.  (Doc. # 28-4 at 39).  Thereafter, on October 31, 2011, Plaintiff's hourly rate was increased from $14.87 to $15.12 per hour.  (Doc. # 28-3 at 23-35).  Meyers testified that she made this unconditional change because she knew "he was unhappy, and the [EEOC] charge came through, wanted – he's a good employee, wanted to make him as happy as possible, so gave him the quarter an hour raise." (Doc. # 28-8 at 20).  She had some discretion on her part to make this decision and she took into consideration that he performed some CIP duties.  (*Id.*).

As Receivers, Plaintiff, Robles, and Hall performed substantially the same job duties and would substitute for each other on the different shifts. (Doc. # 28-1 at pp. 94-98). Plaintiff testified that, in comparison, the volume of trucks might have been one or two less on the weekends, but for the most part the volume was pretty much the same. (Doc. # 28-1 at pp. 95-96). When Plaintiff filled in for Robles on his weekend shift, Plaintiff performed all the same duties as Robles. (Doc. # 28-1 at pp. 95-98).

Plaintiff asserts that, on one occasion when Blankenship sought him out to vent a truck, Blankenship told him "I'm so sick of you and your kind." (Doc. # 28-1 at pp. 171-75). Plaintiff also believed that Blankenship only spoke to white employees when they addressed him, but not black employees. (Doc. # 28-1 at pp. 171-75). Blankenship also testified that, when he was in a management training program, he was called in to speak with Meyers and Human Resources after two black employees complained that he had said something to the effect of "you people are killing me." (Doc. # 28-6 at pp. 187-91). At the meeting the employees wanted to know if Blankenship meant anything racially discriminatory by that, and Blankenship assured them he did not. (Doc. # 28-6 at p. 189).

When Plaintiff was first in training with Defendant, he was told by Tommy Morgan that he had received an extra $1.00 per hour for being a leadman in the receiving bay. (Doc. # 28-1 at pp. 113-14). At some point in time, Plaintiff went to Meyers regarding leadman qualifications, and Meyers told him the receiving bay did not need a leadman and there was no leadman title for the receiving bay. (Doc. # 28-1 at p. 114).[3] There is no documentation indicating that Robles was a

---

[3] There is no indication in the record when this conversation took place, and, in particular, the record does not indicate whether it occurred was while the CBA was in effect (or before that time). (Doc. # 28-1 at pp. 113-15).

6

leadman and he was never told he was a leadman. The documentation for his $1.00 pay increase states "$1.00 CIP/Batch/Lab Cert/Maint help." (Doc. # 28-3 at pp. 23-35).

**II.     Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

**III.    Analysis**

After careful review and for the reasons stated below, the court concludes that there are no material issues of fact in this case and that Defendant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56.

    **A.    Plaintiff's Amended Complaint**

Plaintiff's Amended Complaint asserts the following claims under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981:

    1.    Count I - Racial Discrimination - Wages
    2.    Count II - Racial Discrimination - Heightened Scrutiny
    3.    Count III - Racial Discrimination - Harder Tasks
    4.    Count IV[4] - Racial Discrimination - Denial of Overtime

(Doc. # 16).

As the Eleventh Circuit has explained, "[b]oth § 1981 and Title VII 'are subject to the same standards of proof and employ the same analytical framework.'" *Bryant v. Jones*, 575 F.3d 1281, 1296, n. 20 (11th Cir. 2009); *see also Sims v. Coosa County Bd. of Educ.*, 2008 WL 4080769, at *4 (M.D. Ala. 2008) ("The elements of § 1981 race discrimination claim in the employment context are the same as a Title VII disparate treatment claim.") (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)). Thus, as the substantive analysis for these claims is the same, it is appropriate to discuss contemporaneously whether Plaintiff has met this standard with respect to both his Title VII and § 1981 claims.

Where, as here, a plaintiff relies upon circumstantial evidence of discrimination and retaliation under Title VII and § 1981, courts apply the burden-shifting analysis of *McDonnell*

---

[4] Plaintiff's Amended Complaint contains two counts labeled "Count III," but the court will refer to the second of these as Count IV. (Doc. # 16 at 8).

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008). Under this analysis, once a plaintiff has established a prima facie case of discrimination or retaliation, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason'" for the challenged action. *Crawford*, 529 F.3d at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer does so, "the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Id.* (citations omitted).

To prevail under Title VII or § 1981, evidence must be presented that is "sufficient to create an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). A plaintiff can establish that inference by showing: "(1) he was a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside the protected class more favorably." *Crawford*, 529 F.3d at 970.

      **1.**    **Count I - Wages**

There are two aspects to Plaintiff's disparate pay claim. Plaintiff asserts that he (1) was paid a lower hourly rate than other employees, and (2) did not receive Robles's pay rate when he worked Robles's weekend shift for him.

          **a.**    **Plaintiff's Claim He Received a Lower Hourly Rate than Robles and Hall**

In order to establish a prima facie case of disparate pay, a plaintiff must show that he occupies a position similar to that of a higher paid employee who is not a member of his protected class. *Crawford*, 529 F.3d at 974-75; *Meeks v. Computer Assocs. Int.l*, 15 F.3d 1013, 1019 (11th Cir. 1994). The employee whom the plaintiff identifies as a comparator must be similarly situated *in all relevant respects*. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (emphasis

9

in original); *Holifield*, 115 F.3d at 1562. The Eleventh Circuit has held this to mean that "[t]he comparator must be nearly identical to the plaintiff." *Wilson*, 376 F.3d at 1091; *Mannicia v. Brown*, 171 F.3d 1364, 1368 (11 th Cir. 1999). Plaintiff has failed to establish a prima facie case of disparate pay because neither of the asserted comparators he has identified is similarly situated to him in all relevant respects.

Robles was a Receiver on the weekend shift and was considered the Leadman because he was at the plant on the weekends by himself doing additional tasks. Moreover, on one occasion when Plaintiff covered the weekend shift for Robles, and after speaking with Meyers about the matter (Doc. # 28-1 at 45), Plaintiff received the additional $1.00 per hour. (Doc. # 28-8 at p. 76).

There are a number of deficiencies in Plaintiff's arguments regarding his pay claims. One of the principle ones is that Plaintiff argues out of both sides of his mouth as to Robles. First, Plaintiff claims (in support of his claim that Robles should not have been paid more than him) that Robles and he performed the same tasks. Yet at the same time, Plaintiff complains that he did not receive the same rate of pay as Robles when he filled in for him because he had to perform those additional tasks which Robles usually performed on the weekends. Either Robles had additional duties which justified Plaintiff seeking the additional pay on the weekend shifts he worked when he filled in for Robles (in which case Robles properly received a higher pay rate than Plaintiff taking into account their differing job responsibilities in their regular jobs), or Plaintiff was not entitled to that additional pay when he covered for Robles on a weekend shift. Plaintiff cannot have it both ways. After careful review, the court concludes that the Rule 56 evidence establishes that, in their respective (*i.e.*, regular) jobs, Robles and Plaintiff were not similarly situated because Robles approximated a Leadman on weekends and performed additional tasks on those weekend shifts. This

justified his higher pay. Indeed, Plaintiff received that additional pay on a particular weekend shift that he covered for Robles.

Moreover, in any event, the Rule 56 record evidence indicates that the reason Robles received the additional pay and Plaintiff did not is simply not related to any allegation of race discrimination.[5] Properly understood, the key issue does not revolve around the fact that these two employees were not paid extra for doing that weekend work in a substitute capacity. Rather, the question is whether there is evidence of disparate treatment related to Robles's receipt of higher pay for his weekend job duties in comparison with the job duties performed by Plaintiff in his job during the week. In that respect, the evidence is undisputed—Robles had additional duties and responsibilities, and worked unsupervised in his job. Thus, Plaintiff has failed to raise an inference of race discrimination based on Robles's receipt of this additional pay.

Plaintiff also attempts to compare himself with Hall. As to that comparison, it is undisputed that Hall earned 25 cents more per hour than Plaintiff. However, again Plaintiff cannot establish that he was similarly situated to Hall during that time period because Hall (1) was qualified to perform Sanitation/CIP work, (2) actually was performing that work in addition to his Receiver job duties, and (3) had actually requested the additional pay for that work. (Doc. # 28-10 at ¶ 8). Although Plaintiff performed some CIP duties as part of his Receiver position, Hall performed additional Sanitation/CIP duties on the raw side of the plant and on other lines that are cleaned only at night,

---

[5] As it relates to a comparison of the different pay that Plaintiff and *Robles* received for working in their respective jobs, the weekend fill in work performed by Plaintiff is a red herring, at best. Indeed, the fact that Plaintiff even claims he was due additional pay for the weekend work supports Defendant's position that the weekend job involved more work and responsibility. Moreover, Hall (who is a Caucasian and works as a Receiver on the night shift) was treated similarly to Plaintiff when he did not receive the additional $1.00 per hour given to Robles for being a leadperson when he covered the weekend shift for Robles. Indeed, prior to the time Meyers approved the receipt of the additional $1.00 per hour for covering for Robles on the weekend, there were times when both Hall and Plaintiff had covered the weekend shift for Robles without receiving that additional pay. (Doc. # 28-10 at ¶ 9).

after production has ended for the day. (Doc. # 28-10 at ¶ 8). Plaintiff worked the day shift when these duties were not performed (and were not required). Thus, he and Hall are not similarly situated in all relevant respects, and are not proper comparators.

In addition, even if Plaintiff could establish a prima facie case based upon comparator evidence (and, to be clear, he has not) Defendant has stated legitimate, non-discriminatory reasons for the pay differences between Plaintiff on the one hand, and Robles and Hall on the other. Robles had additional duties *and* was the equivalent of a Leadperson; Hall was qualified to and did perform additional Sanitation/CIP tasks. Plaintiff is required to meet this non-discriminatory explanation head on by showing that these reasons are a pretext for discrimination. He has failed to do so.

To establish pretext, Plaintiff must show both (1) that the employer's reason was false *and* (2) that it was a pretext for race discrimination. *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006); *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). That is, even if a plaintiff shows that his employer's reasons are false, he must still show that race discrimination was the real reason for the decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Brooks v. County v. Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006). A plaintiff cannot successfully show pretext "by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

As Plaintiff has pointed out, Defendant could certainly have documented its pay decision in a more precise manner. However, Plaintiff has presented no evidence (much less substantial evidence) to suggest that the real reason for those decisions was race discrimination. Even the meager "evidence of racial animus" discussed in Plaintiff's brief does not even necessarily suggest

racial bias[6] with respect to any decision at issue here. Moreover, the instances where Blankenship used these terms were in no way related to the pay decisions at issue and there is no evidence even suggesting they were proximate in time.

Courts are not concerned with whether an employment decision is prudent or fair, only with whether it was motivated by unlawful animus. An employer may fire an employee for a reason based on erroneous facts or for no reason at all, so long as it is not done for a discriminatory reason. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). "Federal courts do not sit as super-personnel departments that reexamine an entity's business decisions ... ." *Chapman v. Al Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000). Even if Plaintiff had presented evidence sufficient to establish a prima facie case of disparate pay, he has failed to present pretext evidence—*i.e.*, Rule 56 evidence suggesting that race discrimination was the real reason for Defendant's decisions.

Plaintiff has also argued that Hall was treated more favorably because he was paid an additional 25 cents per hour for the night shift Receiver position. Plaintiff notes that when he worked as a Receiver on the night shift, he did not receive that additional pay. This claim necessarily fails for at least two reasons. First, the situations are simply not comparable. The CBA was in effect when Hall worked in that position but it was not in effect at the time that Plaintiff worked the night shift. Second, and perhaps even more importantly, this claim is time-barred. The longest statute of limitations applicable to § 1981 claims is four years. *Jones v. R.R. Donnelley &*

---

[6] To be sure, "you people" and "your kind" are phrases that can be uttered with discriminatory intent. On the other hand, these same phrases may also be used without any such intent. But the key point here is not how a trier of fact would view the motive behind these statements, but rather that the statements—even viewed in the light most favorable to Plaintiff—are wholly unrelated to any employment decision at issue affecting Plaintiff.

*Sons Co.*, 541 U.S. 369, 382 (2004). Plaintiff's Complaint was filed March 27, 2012. (Doc. # 1). Plaintiff began working for Defendant as a Receiver in 2006 and worked in that position until May 2007, when Plaintiff was classified as either a Filler Operator or a Pasturizer. He remained in that classification from May 2007 until the summer of 2008, when the position was eliminated and he was re-classified as a Receiver and chose to work the day shift. (Doc. # 28-1 at pp. 16-18, 21, 33-34, Exs. 1-2, 7). Any claim based on Plaintiff's previous assignment as a Receiver on the night shift arose prior to May 2007, more than four years before the Complaint was filed, and is therefore time-barred.

### 2. Plaintiff's Claim That He Was Not Paid the Same Pay Rate as Robles When Plaintiff Was Filling in for Robles Doing Weekend Work

Plaintiff claims he should have received overtime pay at the rate of the person for whom he filled in (*i.e.*, Robles). This claim is without merit.

First, Plaintiff cannot establish a prima facie case of race discrimination. Although Plaintiff claims that Robles is a proper comparator, he is mistaken for the same reasons already discussed above. Actually, to the extent Plaintiff can point to a proper comparator here, it is Hall. Hall also filled in for Robles on weekends. That is, Plaintiff, who is African-American, and Hall, who is Caucasian, both substituted for Robles and on each occasion (with the exception of when Plaintiff actually received extra pay after the issue was raised with management) neither Plaintiff or Hall received Robles's rate of pay when doing so. Because Plaintiff and Hall were similarly situated in this limited respect and were treated the same (except, again, in a manner *favoring Plaintiff*) when performing this fill in work, a prima facie case of disparate racial treatment cannot be shown on these facts.

Second, and again for the same reasons discussed above, Plaintiff has not raised substantial evidence that Defendant's articulated reasons are a pretext. Plaintiff has done nothing to call into question Defendant's reasons for paying him differently than Robles while doing substitute work. And, more importantly, he has not presented any evidence of disparate treatment due to race. Once he raised the issue, he received the additional pay. Before he raised the issue, neither he nor Hall received the additional pay. Therefore, Plaintiff has failed to establish that Defendant's reasons for failing to pay him at Robles's rate for working the latter's shift are a pretext for race discrimination.[7] And, he has also failed to raise any actionable issue regarding Hall. While Hall may be a proper comparator in this context—because both he and Plaintiff filled in for Robles—Hall was treated the same as Plaintiff. Even if there were an inference of discriminatory intent (and, to be sure, there is not) this would negate it. Thus, the evidence does not show that race discrimination was the real reason for this decision.

Finally, to the extent that Plaintiff argues that Defendant's pay decisions were inconsistent with the CBA and that this inconsistency constitutes evidence of pretext, this argument, too, fails as a matter of law. Violations of a CBA or a breach of internal policies alone does not amount to a showing of pretext. *See Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007) (even where an employment decision violates corporate personnel policies, it does not necessarily indicate racial discrimination); *Johnson v. Secretary, U.S. Dept. of Veterans Affairs,* 517 Fed.Appx. 933, 936 (11th Cir. 2013) ("[A] breach of internal policies alone does not amount

---

[7] To the extent that the hours spent by Plaintiff covering for Robles were overtime hours, the Fair Labor Standards Act provides that employees are generally entitled to receive overtime pay at one and one-half times their "regular rate" for all hours worked in excess of forty per week. See 29 U.S.C. § 207(a)(1) (emphasis added). Thus, to the extent that Plaintiff worked overtime hours filling in for Robles, it was proper to pay him at one and one half times his regular hourly rate. Of course, no FLSA claim has been asserted in this case.

to a showing of pretext"); *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."). Plaintiff has failed to raise an inference of race discrimination as to his not receiving Robles's rate of pay when he covered for him.

>    **B.   Counts II and III - Heightened Scrutiny and Harder Tasks**

The Eleventh Circuit has held, with respect to a disparate treatment claim, that "an 'adverse employment action' includes 'termination, failure to hire, or demotion.'" *Blue v. Dunn Const. Co., Inc.*, 453 Fed.Appx. 881, 884 (11th Cir. 2011) (quoting *Crawford*, 529 F.3d at 970). In order to be actionable, "[a]n employer's conduct falling short of those actions 'must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.'" *Blue*, 453 Fed.Appx. at 884 (citing *Crawford*, 529 F.3d at 970). "With regard to the level of substantiality required, the plaintiff must demonstrate that he 'suffered a *serious and material* change in the terms, conditions, or privileges of employment.'" *Blue*, 453 Fed.Appx. at 884 (citing *Crawford*, 529 F.3d at 970-71) (emphasis in original).

"[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). The issues of heightened scrutiny, harder tasks, and additional minor tasks such as picking up cigarette butts and removing cobwebs do not rise to the level of an actionable adverse employment action as a matter of law. *See, e.g., Dominguez v. Lake Como Club*, 520 Fed.Appx. 937, 941 (11th Cir. 2013) (more difficult assignments not adverse); *White v. Hall*, 389 Fed.Appx. 956 (11th Cir. 2010) (same);

*Gossard v. JP Morgan Chase & Co.*, 612 F.Supp.2d 1242, 1249-50 (S.D. Fla. 2009) (heightened scrutiny of the plaintiff is not an actionable adverse employment action); *Belt v. Alabama Historical Comm'n*, 181 Fed.Appx. 763 (11th Cir. 2006) (minor changes in job duties including suspending authority to order inventory and requiring reports to go through supervisor were not adverse employment actions). Therefore, Plaintiff cannot establish disparate treatment claims based on these issues.

Moreover, as to the fact issue of whether he was required to perform harder tasks, Plaintiff testified that the volume of trucks might have been one or two less on the weekends, but for the most part the volume was pretty much the same. (Doc. # 28-1 at 26). Thus, neither the Eleventh Circuit's well-settled law nor the Rule 56 evidence supports Plaintiff's allegations of harder tasks. This claim fails as a matter of fact, law, and logic.

    **C.    Count IV - Racial Discrimination - Denial of Overtime**

In his Amended Complaint Plaintiff alleged that Blankenship "would offer overtime to white employees, and only when those white employees declined the available overtime did Blankenship offer it to African-American employees." (Doc. # 16 at ¶ 13). Although a denial of overtime does constitute an adverse employment action, the evidence shows that, under Blankenship, Plaintiff worked overtime on sixteen (16) occasions, while Hall only worked overtime on two (2) occasions. (Doc. # 28-1 at 37, Ex. 17 and 18). Therefore, Plaintiff cannot use Hall as a comparator to establish a prima facie case because Plaintiff was treated more favorably than Hall in overtime assignments.

Plaintiff also complains that, after working his weekend shift that involved overtime, Robles worked overtime during the week when Plaintiff asserts that he was available to work late. Assuming without deciding that Plaintiff has presented sufficient evidence to raise a genuine issue

of fact regarding a prima facie case of denial of overtime in comparison to Robles, Defendant's reason for offering overtime during the week to Robles was that he was the logical choice because he had added skills and he was available since he only worked weekends on his regular shift. (Doc. # 28-6 at p. 150; Doc. # 28-8 at p. 90).

Plaintiff has not come forward with substantial evidence which shows this reason is false. Moreover, as discussed in more detail above, even if Plaintiff could show that Defendant's reasons were false, he must also show that race discrimination was the real reason for the challenged decision. *St. Mary's Honor Ctr.*, 509 U.S. at 515; *Brooks*, 446 F.3d at 1163. Plaintiff has missed the mark on this score because he has done nothing more than quarrel with Defendant's reason by asserting that it would have been less expensive for Plaintiff to work overtime instead of Robles. A plaintiff cannot successfully show pretext by second guessing his employer's business judgment or "simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Because Plaintiff has done nothing more than that, his denial of overtime claim fails as a matter of law.

**IV. Conclusion**

For the foregoing reasons, Defendant is entitled to judgment as a matter of law on all of the claims asserted in Plaintiff's Amended Complaint and Defendant's Motion for Summary Judgment is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this ___21st___ day of March, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE